COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-08-238-CV

 

 

IN THE INTEREST OF T.L.S. AND                                                           

R.T.S., CHILDREN

 

 

                                              ------------

 

           FROM THE 325TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                          I.  INTRODUCTION








This appeal concerns a motion to modify the
parent-child relationship between Appellant Barbara,[2]
Appellee Philip, and their two children from their prior marriageCT.L.S.
and R.T.S.  In her first, second, and
third issues, Barbara appeals the trial court=s
modification of a geographical restriction contained in the parties= agreed
divorce decree.  In her fourth and fifth
issues, Barbara appeals the trial court=s award
of attorney=s fees to Philip.  We reverse and render in part and reverse and
remand in part.

                          II.  FACTUAL AND PROCEDURAL BACKGROUND

Barbara and Philip divorced in August 2004.  The parties agreed in their divorce decree
that Barbara, as the custodial joint managing conservator for their two
children, would have the right to establish the primary residence for the
children Awithin [a] 30 mile radius of
Mansfield, Tarrant County, Texas.@  Allegedly, in March 2007, Philip learned that
Barbara intended to violate the geographical restriction and relocate herself
and the two children to Richardson, Texas. 
Philip alleges that T.L.S.=s friend
told him that Barbara intended to move outside the geographical restriction so
that their daughter could play on a different softball team.

Philip filed an emergency motion to modify the
parent-child relationship and request for temporary restraining order on March
30, 2007.  Barbara, in her response,
alleged that she had not Aat this time@ made
any arrangements to relocate her primary residence.








On May 8, 2007, Barbara filed a motion to clarify
the geographical restriction.  She
requested that the trial court find that the thirty-mile radius be measured from
any point fixed within the city limits of Mansfield, ostensibly so that she
could in fact move to areas within Richardson, Texas, without violating the
agreed to geographical area.  The trial
court held a hearing and ultimately issued temporary orders restricting Barbara
from moving the two children=s
primary residence from Mansfield.

Barbara also filed her own motion to modify
asking the trial court to modify and extend the geographical restriction to
allow her the right to establish the children=s
primary residence to include Tarrant and contiguous counties.  Ultimately, Barbara proposed a parenting plan
that asked the court to either extend the geographical restriction to include
Tarrant and contiguous counties, or in the alternative, to leave the current
thirty-mile restriction in place.  The
trial court held a hearing concerning the cross-motions to modify on February
1, 2008.

The trial court had previously appointed Donna Kelly-Powell
to counsel the parties and their children. 
The court ordered that all parties attend a minimum of five sessions.








At the February 1 hearing, Kelly-Powell testified
that she saw the children in individual sessions and saw Barbara and Philip in
one individual session each. 
Kelly-Powell said she then saw Barbara and Philip in one joint
session.  Kelly-Powell stated that
Barbara cancelled all future joint sessions alleging that, AI just
didn=t feel
like that we accomplished anything.@  Kelly-Powell continued to see the two
children individually, and would discuss the children=s
progress with either Barbara or Philip, depending on who brought them.  Kelly-Powell eventually began to see R.T.S.
more frequently than T.L.S. because, according to Kelly-Powell, Ahe was
the one who was having more difficulty.@  Kelly-Powell began to believe that R.T.S.
might be suffering from a variety of problems including:  problems adapting to new situations, moderate
anxiety, inattentiveness, and mild to moderate problems associated with social
and study skills.  Kelly-Powell
eventually recommended that R.T.S. see psychologist Dr. Daniel Lowrance.

Lowrance testified that although Kelly-Powell had
wanted testing regarding whether R.T.S. had attention-deficit hyperactivity
disorder, bipolar disorder,  and other
problems,  his diagnosis was that R.T.S.
actually suffered from Aagitated depression@ that
was situational and mostly due to his relationship with his father and having
to live in a two-bedroom apartment where he was constantly in Aclose
proximity to his sister.@








Both Barbara and Philip testified about why they
believed that the geographical restriction should be changed.  Philip testified that he wanted the
geographical restriction to constrict to include only Mansfield,[3]
while Barbara testified that although due to work and school she preferred the
geographical restriction to expand, she was fine with what the parties had
originally agreed to.  At the close of
the hearing, the trial court ordered that Barbara move into a three-bedroom
residence within thirty days and constricted the geographical area so that
Barbara could only establish the children=s
primary residence to be located within AMansfield
or the Arlington ISD.@ 
Per Barbara=s request, the trial court
issued findings of fact and conclusions of law. 
The trial court specifically found that A[it] is
in the best interest of the children that [Barbara] have the exclusive right to
designate that the children=s
primary residence [be] within the geographical area of the Mansfield ISD or
Arlington ISD.@ 
This appeal followed.

                                           III.  DISCUSSION

A.     Modification
of Previous Conservatorship Order

In her first, second, and third issues, Barbara
argues that the trial court abused its discretion in finding a material and
substantial change in circumstances to warrant modification of the residence
restriction.  We agree.








1.     Standard
of Review

We review a trial court=s order
modifying conservatorship under an abuse of discretion standard.  In re T.D.C., 91 S.W.3d 865, 872 (Tex.
App.CFort
Worth 2002, pet. denied); see Gillespie v. Gillespie, 644 S.W.2d 449,
451 (Tex. 1982).  The trial court abuses
its discretion if it acts arbitrarily and unreasonably or without reference to
any guiding principles.  Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241B42 (Tex.
1985), cert. denied, 476 U.S. 1159, 106 S. Ct. 2279 (1986).  Legal and factual sufficiency of the evidence
are not independent grounds of error, but relevant factors in determining
whether the trial court abused its discretion.  In re T.D.C., 91 S.W.3d at 872; In re
Marriage of Bertram, 981 S.W.2d 820, 822 (Tex. App.CTexarkana
1998, no pet.).








In determining whether the trial court abused its
discretion in modifying conservatorship, we apply a two‑pronged
test:  (1) whether the trial court had
sufficient information on which to exercise its discretion and (2) whether the
trial court erred in its application of discretion.  In re T.D.C., 91 S.W.3d at 872.  That is, first we determine whether the evidence
was legally and factually sufficient for the trial court to support a decision
on modification and, second, whether the decision made was reasonable.  Id. 
A clear failure by the trial court to analyze or apply the law to the
facts correctly is an abuse of discretion. 
In re M.N.G., 113 S.W.3d 27, 32 (Tex. App.CFort
Worth 2003, no pet.); see Walker v. Packer, 827 S.W.2d 833, 840 (Tex.
1992).

In conducting a legal sufficiency, or Ano
evidence@ review,
we consider the evidence in the light most favorable to the trial court=s
judgment, disregarding all evidence and inferences to the contrary unless a reasonable
factfinder could not do so.  City of
Keller v. Wilson, 168 S.W.3d 802, 810B11 (Tex.
2005).  We do not disregard contrary
evidence if (a) there is no favorable evidence, or (b) contrary evidence
renders supporting evidence incompetent, or (c) contrary evidence conclusively
establishes the opposite.  City of
Keller, 168 S.W.3d at 810B11.  Anything more than a scintilla of probative
evidence is legally sufficient to support the trial court=s
finding.  In re T.D.C., 91 S.W.3d
at 872.

In determining whether the evidence was factually
sufficient to support the trial court=s
judgment, we review the trial court=s
findings under the same standards used in reviewing jury answers.  In re Z.B.P. & J.N.P., 109 S.W.3d
772, 776B77 (Tex.
App.CFort
Worth 2003, no pet.).  We consider all
the evidence and set aside the findings only if we find that they are so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
manifestly unjust.  Id.; see
Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).








2.     Material
and Substantial Change

In an effort to ensure stability and continuity
for children, Texas law has imposed Asignificant
hurdles@ before
a conservatorship order may be modified.  Bates v. Tesar, 81 S.W.3d 411, 426 (Tex.
App.CEl Paso
2002, no pet.).  Specifically, a trial
court may modify a conservatorship order only if Athe
circumstances of the child, a conservator, or other party affected by the order
have materially and substantially changed@ since
the previous order and modification would be in the child=s best
interest.  Tex. Fam. Code Ann. ' 156.101
(Vernon 2008).

Under this scheme, the threshold question is
whether a material and substantial change of circumstances has occurred because
the original decree is res judicata of the children=s best
interest.  Watts v. Watts, 563
S.W.2d 314, 316 (Tex. Civ. App.CDallas
1978, writ ref=d n.r.e.).  Absent a material and substantial change of
circumstances, revisiting the prior determination of best interest is
inappropriate.  In re M.N.G., 113
S.W.3d at 34.  The burden is on the
moving party to show a material and substantial change in circumstances;
otherwise, the trial court must deny the motion.  See Zeifman v. Michels, 212 S.W.3d
582, 589 (Tex. App.CAustin 2006, pet. denied).








In deciding the material and substantial change
of circumstances question, a trial court is not confined to rigid or definite
guidelines.  In re Z.B.P., 109
S.W.3d at 779.  Instead, the court=s
determination is fact‑specific and must be made according to the
circumstances as they arise.  Zeifman,
212 S.W.3d at 593.  But, by design, the
evidence must show more than a simple showing that a requested modification
would be in the children=s best interest.  See Tex. Fam. Code Ann. ' 156.101(1).

3.     Evidence
of Changed Circumstances

In this case, there are two distinct categories
of evidence on which the trial court could have relied to determine whether
there had been a material and substantial change:  (1) the evidence of Barbara=s desire
to move to Richardson, and (2) the evidence of R.T.S.=s
psychological condition.

a.      Barbara=s Desire
to Move

At the modification hearing, Philip testified
that Barbara had relayed to him that it was her intention to move as close to
Richardson as she could under the original divorce decree=s thirty-mile
radius provision.  Philip said that if
Barbara moved to the outer boundary of that restriction, his midweek
visitations would probably Abecome a
traffic impossibility.@ 
Philip further averred that he had Atrust
issues@ with
Barbara regarding where she might move the children within the thirty-mile
restriction.  He also testified that he
would Alike to
know exactly where@ Barbara intended to move the
children and that it was his preference that the children stay Awhere
they [would] be close to their father.@








None of this testimony by Philip is evidence of a
change of circumstances.  Philip may not
have appreciated the difficulty he would encounter by agreeing to the original
geographical restriction, but that difficulty would not be due to anything that
happened after the divorce decree.  The
possibility that Barbara would move to the outer boundary of the thirty-mile
restriction was contemplated at the time of the original agreement.  None of Philip=s
testimony regarding possible difficulties in traveling within the thirty-mile
restriction could serve as sufficient evidence on which the trial court could
have exercised its discretion.

Other evidence of a potential change of
circumstances in the record is the allegation that Barbara intended to move to
Richardson beyond the thirty-mile radius. 
But the record clearly demonstrates that when Barbara did move, she
moved from her home in Mansfield to a two-bedroom apartmentCin
Mansfield.  Both of these locations were
within the thirty-mile restriction.  This
testimony also cannot serve as sufficient evidence on which the trial court
could have exercised its discretion.








Still regarding Barbara=s
attempts to move, the only other evidence in the record that would suggest that
circumstances had changed was the testimony of Kelly-PowellCthe
court-appointed counselorCwho testified that she believed
R.T.S. would benefit from staying within the Mansfield ISD, more specifically
in his current school.  But this
testimony, admittedly, was predicated on the same perceived difficulties Philip
testified toCthat Barbara moving outside of
Mansfield Awould [move the children]
further away, that it would be more difficult for [Philip] to be able to see
them as often, and he would not be able to be as involved in their lives.@

The trial court was obviously swayed by the
testimony concerning the difficulties Philip would face in traveling to the
outer boundary of the original thirty-mile restriction.  The trial court stated that its decision to
constrict the original geographical restriction was because Aa
commute [of thirty miles] . . . would interfere with [Philip=s]
ability to have a relationship with his children.@  But the ultimate restriction imposed by the
trial court was inconsistent with the counselor=s
request that R.T.S. be restricted to living in Mansfield.  The trial court=s
imposed restriction was that the children not be moved from Mansfield or
Arlington.  This is the exact restriction
requested by Philip in his motion to modify.








Thus, if the modification to the geographical
restraint was predicated on Kelly-Powell=s or
Philip=s
testimony regarding the difficulties encountered traveling within the original
agreed-to area, the trial court erred in exercising its discretion.  And if the modification was predicated on the
counselor=s testimony, the trial court
arbitrarily conformed the restriction to Philip=s
request, rather than Kelly-Powell=s
testimony.  Either way, based on this
evidence, the trial court acted arbitrarily and unreasonably and abused its
discretion in modifying the original geographical restriction.

b.     Evidence
of R.T.S.=s Emotional Problems

There is some evidence in the record that R.T.S.
was experiencing emotional difficulties, including anger toward his father and
sister.  Kelly-Powell testified that
R.T.S. would have difficulty changing to Aanother
school . . . because of his emotion and social difficulties.@  [emphasis added] Kelly-Powell attributed
R.T.S.=s
difficulties to having been Aput in
the center@ of the parents=s
struggles.  Kelly-Powell also testified
that she had referred the parties to a psychologistCDr.
Lowrance.








Lowrance testified that R.T.S.=s
difficulties were Asituational@ and
stemmed mostly from R.T.S. having to live in a two-bedroom apartment where he
shared Aone room
for all of [his and his sister=s]
things.@  Lowrence testified that there was nothing to
indicate that R.T.S.=s difficulties required any
special care that R.T.S. could not receive from another school district of
comparable size to Mansfield.  When asked
if R.T.S. would have difficulty changing schools, Lowrence stated, A[n]one
that I=m aware
of.@  Lowrence also testified that R.T.S. had
expressed to him that he preferred to move to a different school.  When asked whether it was relevant that
R.T.S. lived in AMansfield . . . [or
Fort] Worth . . . [or] Keller,@
Lowrence replied, AIt=s not
the building that=s causing the problem.@  Ultimately, Lowrence testified that what
would be most helpful to R.T.S. would be Aif [his]
mother got where [R.T.S.] had his own facility, his own room and some space.@

Assuming that the trial judge disregarded all of
Lowrence=s
testimony and believed only Kelly-Powell, the modified geographical restriction
is still inconsistent with Kelly-Powell=s
testimony, which recommended leaving R.T.S. in his current school.  The trial court=s
ultimate restriction was that the children not be moved from Mansfield or
Arlington.  Again, this is the exact
restriction requested by Philip.  But the
trial court was obviously swayed by Lowrence=s
testimony.  The trial court imposed an
order on Barbara that she Aget a
three-bedroom where each child has their own room within 30 days.@  The trial court even chided Barbara for
having moved to a Acramped apartment@ and
stated that R.T.S.=s anger toward Philip was
Barbara=s Afault@ for not
currently living in a three-bedroom apartment.








The trial court determined, in its findings of
fact, that it would be in the best interest of the children to modify the
previous geographical restriction by constricting Barbara=s right
to designate the children=s primary residence to Mansfield
ISD or Arlington ISD.  There is simply no
evidence to support this modification. 
Thus, the trial court should not have exercised its discretion, and if
it should have, it acted arbitrarily and unreasonably and abused its discretion
in modifying the original geographical restriction.  We hold that the trial court abused its
discretion in modifying the original divorce decree=s
geographical restriction and sustain Barbara=s first,
second, and third issues.

B.     Attorney=s Fees 

1.     Attorney=s Fees
for Appeal

In her fourth issue, Barbara asserts that there
was no evidence concerning attorney=s fees
in case of an appeal to this court. 
Thus, Barbara argues, the trial court abused its discretion in awarding
them.  We agree.








All of the evidence presented to the trial court
concerning attorney=s fees specifically concerned
the time involved in preparation for the hearing on the motion to modify.  No evidence was presented regarding the
amount of attorney=s fees on appeal.  Thus, the trial court abused its discretion
by awarding attorney=s fees to Philip for this
appeal.  See MacCallum v. MacCallum,
801 S.W.2d 579, 587 (Tex. App.CCorpus
Christi 1990, writ denied) (holding that former wife was not entitled to
attorney=s fees
on former husband=s appeal of his action seeking
modification of child support and visitation, where all evidence related to
attorney=s fees
specifically concerned time involved in preparation for hearing on motion to
modify, and no evidence was presented regarding amount of attorney=s fees
on appeal).  We sustain Barbara=s fourth
issue.

2.     Attorney=s Fees
Incurred Preparing for the Modification

In her fifth issue, Barbara argues that the trial
court abused its discretion by not showing good cause to award Philip attorney=s fees
for the underlying modification action. 
Because Barbara is the prevailing party on appeal respecting the
modification of the geographical restriction, we need not address her fifth
issue.  See In re C.C.J., 244
S.W.3d 911, 924 (Tex. App.CDallas
2008, no pet.).  Rather, we remand the
issue of attorney=s fees for the underlying
modification action to the trial court.  Id.

                                          IV.  CONCLUSION








Having
sustained Barbara=s first, second, third, and
fourth issues, we reverse the portion of the trial court=s order
granting modification of the geographical restriction and render judgment that
Philip=s
proposed modification of the geographical restriction is denied, and we reverse
and render regarding the trial court=s
awarding to Philip attorney=s fees
for appeal.  Additionally, we reverse the
portion of the trial court=s order
awarding the attorney=s fees pertaining to preparation
of the modification to Philip and remand that issue to the trial court for
reconsideration in light of this opinion.

 

WILLIAM BRIGHAM

JUSTICE

 

PANEL:  LIVINGSTON and MCCOY,
JJ.; and WILLIAM BRIGHAM (Senior Justice, Retired, Sitting by Assignment).

 

DELIVERED: April 9, 2009











[1]See Tex. R. App. P. 47.4.





[2]To protect the privacy of
the parties involved in this appeal, we identify the children by initials only
and Appellant and Appellee by their first names only.  See Tex. Fam. Code Ann. ' 109.002(d) (Vernon
2008).





[3]Although Philip testified
that he wanted the geographical restriction constricted to include only
Mansfield, in his first amended motion to modify the parent-child relationship,
Philip requested that the court modify the geographical restriction be limited
to AMansfield or the
Arlington Independent School District.@